In re STONEMAN et al.

(Surrogate's Court, Albany County. February 20, 1914.)

1. CONTRACTS (§ 159*)—CONSTRUCTION—"FACE"—"FACE OR PAR VALUE."

Testator, on December 23, 1905, contracted with his partner to his interest in the firm for a certain sum, providing that the new firm might, at its option, apply in part payment thereon, "at the face or par value," a mortgage for $1,300, made to the firm on July 17, 1893, carrying interest at 6 per cent. per annum, and might also apply a note to the old firm for $150 executed October 2, 1893, payable in three months. *Held*, that the "face" of an instrument is that which is shown by the language employed without any explanation, modification, or addition from extrinsic facts or evidence, and that the term "face or par value" was intended to include the amount due on the mortgage note, with interest, at the time of election, to apply as part payment, and that as to the $150 note no interest could be computed; none being provided for on the face of the instrument.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 159.*

For other definitions, see Words and Phrases, vol. 3, pp. 2636, 2637.]

2. WILLS (§ 821*)—CONSTRUCTION OF LEGACY—"AMOUNT."

Testator dying subsequent to 1906, by codicil directed that there be charged against the interest of a daughter, "the amount" of a mortgage for $1,300, made by her and her husband on July 17, 1893, payable with interest at 6 per cent. per annum, and also a note of $150 made by her husband, not purporting to bear interest upon its face, and made other provisions evidencing his intention to treat his children equally. No interest was ever paid on the mortgage, and none was ever demanded. The

memorandum given by another daughter upon a loan to her, "to be paid to his estate without interest," had been delivered to her, and receipted for as cash to that amount. *Held*, that testator, by the use of the word "amount," did not intend to charge the interest, but only the principal, against the daughter's share in the distribution of his estate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2114–2119; Dec. Dig. § 821.*

For other definitions, see Words and Phrases, vol. 1, pp. 375, 376.]

In the matter of the final judicial settlement of the account of proceedings of William J. Stoneman and Alexander S. Rowland, as executors of the last will and testament of Matthew G. Stoneman, deceased. Will and partnership contract made by testator construed.

Frost, Daring & Warner, of Albany, for William J. Stoneman.
Reeves & Todd, of New York City, for Rowland.
Stedman & Stedman, of Albany, for Breitenstein.

VAN DERZEE, S. In this proceeding on final accounting, there have been submitted for determination two questions of intent to be derived from the will and from a written contract made by the testator in reference to certain assets due decedent from his daughter Carrie E. Breitenstein and her husband, George P. Breitenstein.

The facts are not in dispute, and are set forth in Schedule G of the account. Consideration will first be given to the partnership contracts, the facts concerning which may be summarily stated. On July 17, 1893, the testator and his son William J. Stoneman were engaged in business as copartners, under the name of M. G. Stoneman & Son. On that date, George P. Breitenstein and Carrie E. Breitenstein executed and delivered to said Matthew G. Stoneman and William J. Stoneman a note, wherein it is recited that:

"For value received, I promise to pay Matthew G. Stoneman and William J. Stoneman, or order, the sum of thirteen hundred dollars, with interest thereon at the rate of six per cent per annum from date hereof until fully paid, said interest payable annually according to the tenor of 3 interest coupons hereto annexed, viz.: Each for the sum of seventy-eight dollars, bearing even date herewith," etc.

The note was made payable at a bank in Wisconsin and is secured by a "first mortgage" on certain real estate in Wisconsin. The mortgage is signed, as are also the coupon notes attached, by George P. Breitenstein and Carrie E. Breitenstein.

None of the interest coupons upon this note was paid when due, nor has any interest ever been paid upon this mortgage.

On October 2, 1893, George P. Breitenstein made and delivered to the same firm of M. G. Stoneman & Son his individual promissory note, as follows:

"$150.　　　　　　　　　　　　　　Albany, N. Y., Oct. 2, 1893.

"Three months after date I promise to pay to the order of M. G. Stoneman & Son one hundred & fifty dollars, at the Albany County Bank.

"Value received.　　　　　　　　　Geo. P. Breitenstein."

No interest has ever been paid on this note.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

On December 23, 1905, the testator entered into an agreement in writing with his copartner for a sale of his interest in the firm of M. G. Stoneman & Son, of all the property and assets, of every nature and kind, all the merchandise of the business, as well as all promissory notes, mortgages, claims, and demands due the firm at the time of the transfer. The price agreed upon to be paid the testator "or his executors, administrators or assigns" by the other members of the firm was—

"the sum of·$20,000, upon demand, without interest, except that said new copartnership [which was composed of the remaining members of the firm] may at its option apply in part payment of said Matthew G. Stoneman or his executors, administrators or assigns, at the face or par value thereof, a certain mortgage note of $1,300 made by George P. Breitenstein and Carrie E. Breitenstein; his wife, to the order of said Matthew G. Stoneman and said William J. Stoneman, bearing date July 17th, 1893 and a certain promissory note of $150 made by George P. Breitenstein to the order of M. G. Stoneman & Son, dated Oct. 2nd, 1893."

A further expressed consideration for the transfer of the business was the payment to the testator of the sum of $1,500 annually during his natural life, in consideration for his services and the use of the $20,000, or so much thereof as remained unpaid.

On March 5, 1912, the executors made demand upon the firm of M. G. Stoneman & Son for payment of the $20,000 set forth in the agreement above detailed. Said firm then exercised the option stated above to apply the said mortgage note and the promissory note for $150 in part payment thereof, and in accordance with the option, as they construed it, paid to the executors the sum of $16,876.47. This amount represents the sum of $20,000, less the principal of said notes, with interest thereon computed to the date of payment. The executors gave a receipt therefor, which recites—

"without prejudice to the rights of either party as may be determined by the Surrogate's Court in final accounting."

[1] The question now presented is whether the said firm of M. G. Stoneman & Son was justified in applying, in part payment of the sum of $20,000, the interest on the said notes. To express it more concisely, do the words "face or par value" used in the agreement mean, as to the parties thereto, the principal of the mortgage note and interest as contended by Executor Stoneman, or principal without interest, as claimed by Executor Rowland?

The discussion of counsel for Executor Rowland is, to a considerable extent, upon rules of testamentary interpretation and intent. In the brief several things are assumed as facts which are not before me as proof. For instance, it is assumed that the decedent was the controlling influence in the firm of M. G. Stoneman & Son; that the $1,300 loaned to Mrs. Breitenstein, evidenced by the mortgage note, was the money of the testator; that the mortgage note, when executed, was delivered to and held by the testator, and not to the mortgagees therein named; that the $1,300 was the money of the decedent at the

time the mortgage was given. No oral testimony was offered in this proceeding. There is no proof to support these assumed facts, nor any indication thereof in the written instruments before me.

The contract now under consideration was made by the testator and his son, William J. Stoneman, and grandson, William H. Stoneman; the latter not a party to this proceeding. And while construction of a contract when all parties interested are not in court may seem an anomalous request, I have concluded to express an opinion, because it is a family affair, and all the parties before me appear to be willing I should make a determination. The construction of the partnership agreement must be based upon the ordinary rules applicable to contracts, and not upon rules of testamentary instruments.

The words used in the instrument of which construction is asked are "face or par value." The face of an instrument is that which is shown by the language employed, without any explanation, modification, or addition from extrinsic facts or evidence. Black's Dictionary.

In People v. Miller, 84 App. Div. 168, 82 N. Y. Supp. 621, it is said:

"The term 'par value' has such a well-known meaning, not only in commercial and financial circles, but as applied to ordinary and everyday business affairs, that resort to the authorities for a definition would appear to be needless. It is sufficient for the purposes of this case to mention the following authorities which hold that in determining 'par value' the interest accrued up to the time of fixing the value must be included with the principal."

My attention has not been called, nor have I been able to find any authority in this state for giving to the words "face or par value" a different meaning than that applied in the Miller Case by Judge Chester.

My conclusion then must be that "face or par value," as used in the contract, means and was intended to include the amount which is due and collectible on the mortgage note at the time of the election by the members of the firm, to use it in part payment of their indebtedness to the testator under the terms of the contract.

As to the $150 note, I think no interest can be computed thereon, because the note does not purport interest upon its face.

[2] In the codicil, the testator directs that there be charged against the interest of his daughter Mrs. Breitenstein the—

"amount of a certain mortgage note of $1,300 made by my said daughter * * * and her husband, * * * and also the amount of a certain promissory note of $150 made by George P. Breitenstein to the order of the firm of M. G. Stoneman & Son."

In the determination of the quantum of this legacy we may now apply the rules of testamentary interpretation, which could not be applied to the contract. These notes bear date of 1893; the will was executed seven years later, in 1900. In the will the decedent mentions the mortgage note by giving it to his daughter Caroline E. Breitenstein. In the codicil of 1906 that legacy of the note was revoked, and the language quoted employed.

The fact that the testator intended to treat all his children equally is evidenced by the eighth paragraph of the will, wherein he bequeaths certain legacies of different amounts to his children after having made devises of specific real property to them. He explains these legacies by saying that the same are, in his judgment, an equalization of the value of the devises already provided for. It appears by the account that the testator loaned his daughter Mary $3,400, "to be paid to his estate without interest," and received from her a written memorandum detailing the transaction. This instrument has been delivered by the executors to her, and receipted for as cash to the amount of $3,400.

In view of these circumstances, I do not believe the testator intended, by the use of the word "amount," to have interest accumulate until it should amount to more than the principal, and this amount taken from the share of his daughter in the distribution of his estate. The fact that interest was, for 18 years, neither asked nor received seems to strengthen the inference that payment thereof was never purposed by the testator from his daughter.

I am of the opinion that the testator intended to give to his daughter as a legacy the notes which she and her husband had given to the firm.