Present: Hassell, C.J., Keenan,[1] Koontz, Lemons, Goodwyn, and
Millette, JJ., and Russell, S.J.

WILLARD W. LANE, JR.

v.  Record No. 090404                   OPINION BY
                                 SENIOR JUSTICE CHARLES S. RUSSELL
JANICE L. STARKE, ET AL.            April 15, 2010


                FROM THE CIRCUIT COURT OF SURRY COUNTY
                      W. Allan Sharrett, Judge

        This is an appeal from a final order in a suit to

construe a will.  It presents questions concerning whether

certain devises of real property created vested or contingent

remainder interests and whether those future interests were

subject to conditions precedent or conditions subsequent.

                         Facts and Proceedings

        The facts are not in dispute.  Willard W. Lane, Sr. (the

testator), a resident of Surry County, died on December 5,

1991.  He was survived by his wife, Bernice J. Lane (the life

tenant).  His will, dated in 1982, was admitted to probate.

The will appointed the testator's son, W. W. Lane, Jr., (Lane,

Jr.) executor but he did not qualify as executor until 2006.

        The testator's will contained the following provisions:

Article II bequeathed all tangible personal property to the

testator's wife; Article III devised the testator's home

_____

        [1] Justice Keenan participated in the hearing and decision
of this case prior to her retirement from the Court on March
12, 2010.

place, with 18 acres of land, to the testator's wife in fee simple absolute. Article IV provides: "All the rest and residue of my estate I give, devise and bequeath to my wife, BERNICE J. LANE, for and during her natural life or until she remarries." Article V provides:

> Upon the death of my wife, she having survived me, or upon her remarriage, I give, devise and bequeath the property herein devised to her for her life or until her remarriage as follows:
>
> 1. I give, devise and bequeath that portion of the ROWELL PLACE [metes and bounds description] to my son, W.W. LANE, JR., upon the EXPRESS condition that he pay into my estate ONE-HALF (1/2) of the ASSESSED VALUE of such property.
>
> 2. I give, devise and bequeath the TWO HOUSES AND LOTS at SCOTLAND to my two daughters, JANICE L. STARKE and MOLLY L. RICKMOND, upon the EXPRESS condition that they pay into my estate ONE-HALF (1/2) of the ASSESSED VALUE of such property.

(Emphasis in original.)

The life tenant died on March 27, 2002, having never remarried. No payment of one-half of the assessed valuations of the properties devised to her for her life had been made by Lane, Jr., Janice Starke and Molly Rickmond (collectively, the remaindermen).[2]

In 2006 Lane, Jr., individually and as executor of his father's will, filed this suit in the circuit court requesting

_____

[2] The term is used collectively, without regard to gender. Black's Law Dictionary 1406 (9th ed. 2009).

aid and direction as to the appropriate date upon which to determine the assessed valuations of the real property in which he and his sisters had been devised remainder interests by their father.  He asked the court to determine whether the date upon which the assessed valuations were to be determined should be (A) the date of the will, (B) the date of the testator's death, or (C) the date of the life tenant's death.[3]

The complaint named as parties Lane's sisters, Janice Starke and Mollie Rickmond, as well as Bryan Lane and Ricky Lane, who had not been mentioned in the testator's will, on the ground that their interests might be affected by the court's decision.  Bryan and Ricky Lane filed answers contending that the remaindermen had forfeited their remainder interests by failing to pay, before the death of the life tenant, into the testator's estate, one-half of the assessed valuations of the properties devised to them, thus failing to comply with a condition precedent.  Bryan and Ricky Lane contended that the three remaindermen had been devised only

---

[3] Lane, Jr. also attached to his complaint two pages of notes, purported to be in the testator's handwriting, that had been found among his effects, asking the court to decide whether they were holographic codicils.  The court ruled that they were not testamentary in nature.  That ruling was not appealed and is not before us.  That ruling is, therefore, the law of the case.

contingent remainders that could not vest until the conditions precedent were met.

After hearing evidence ore tenus and reviewing memoranda of counsel, the circuit court, in a memorandum opinion, held that Article V of the testator's will created contingent remainders, not vested remainders; that the conditions had to be met before the death of the life tenant, which was not done; that the failure of the contingencies caused the properties to revert to the testator's estate to be distributed through the residuary clause of his will; that the residuary clause devised the residue of the testator's estate to the life tenant only for her life and that the residuary clause failed because the life tenant was deceased; and that the testator was therefore intestate as to the property devised under Article V, which would pass to the testator's heirs at law under the statute of descent and distribution. The circuit court entered a final order to that effect. We awarded Lane, Jr. an appeal. [4]

---

[4] We granted Lane, Jr.'s appeal individually, but refused to grant him an appeal in his capacity as executor. Accordingly, he appears as the sole appellant in his individual capacity.

Analysis

The appeal questions the circuit court's legal conclusions.  We review such questions de novo.  Turner v. Caplan, 268 Va. 122, 125, 596 S.E.2d 525, 527 (2004).

The testator's will is ambiguous in that it may be construed in different ways.  Gillespie v. Davis, 242 Va. 300, 304, 410 S.E.2d 613, 615-16 (1991).  It does not explicitly provide for the time the assessed valuation of the devised parcels is to be ascertained.  That uncertainty creates doubt as to the amounts to be paid.  Those issues raise the fundamental legal questions whether the remainders are contingent on payment of the amounts due the estate, or whether the remainder interests vested at the testator's death, leaving the requirements of payment as conditions subsequent.  In the latter case, the required payments would constitute liens upon the land, enforceable in equity, but would not defeat the remainder interests.  Gilley v. Nidermaier, 176 Va. 32, 41, 10 S.E.2d 484, 487-88 (1940).

When testamentary language is clear and unambiguous, it will be applied as written unless it contravenes the law or public policy, because the testator's intent is the "guiding star" in testamentary construction.  Smith v. Trustees of Baptist Orphanage, 194 Va. 901, 903, 75 S.E.2d 491, 493 (1953).  When the language of a will is ambiguous, however,

leaving the testator's intent unclear, the courts are guided by certain well-settled rules of construction. See Clark v. Whaley, 213 Va. 7, 8-9, 189 S.E.2d 46, 47 (1972). Perhaps the most time-honored of these canons of construction in Virginia is the "early-vesting" rule. This Court, in Catlett v. Marshall, 37 Va. (10 Leigh) 83 (1839), construing the will of Thomas, Lord Fairfax dated in 1777, established the rule that "where no special intent to the contrary is manifested, the vesting of legacies shall be referred to the death of the testator." Id. at 96.

More recently, we said:

Our purpose of course is to find the testamentary intent. If a will reflects a clear intent that the determination of beneficiaries be postponed until a life tenant's death, rather than the testator's death, we honor that intent. See Griffin v. Central Nat'l Bank, 194 Va. 485, 74 S.E.2d 188 (1953). But if a will is ambiguous in this regard, we invoke the aid of the canon of construction known as the early vesting rule. Under that rule, "devises and bequests are to be construed as vesting at the testator's death, unless the intention to postpone the vesting is clearly indicated in the will". Chapman v. Chapman, 90 Va. 409, 411, 18 S.E. 913 (1894).

Clark, 213 Va. at 8-9, 189 S.E.2d at 47 (footnote omitted).

Although the will in the present case postpones their enjoyment of the devises made to the remaindermen, there is no language in the testator's will evidencing an intent to postpone the vesting of their remainder interests.

6

Accordingly, the early vesting rule applies. We hold that the remainder interests vested at the time of the testator's death.

Similarly, when testamentary language requires that a monetary payment be made prior to the vesting of a future interest in a remainderman, the requirement will be treated as a condition precedent, but if the language does not <u>necessarily</u> provide that the payment must precede vesting, the condition is treated as a condition subsequent. <u>Wenner v. George</u>, 129 Va. 615, 618, 106 S.E. 365, 366 (1921). As we have previously observed:

> The courts have, wherever possible, construed a provision for the payment of a legacy, or a sum of money, as a charge rather than a condition precedent, in order that the estate may vest in the devisee. Thus, where it appears from the language of the will that the testator intended to couple the payment of the legacy by the devisee with the devise of the land, so that the payment is to be made, because, or as a condition on which, the devise has been made, then the real estate is, in equity, chargeable with the payment of the legacy.

<u>Gilley</u>, 176 Va. at 41, 10 S.E.2d at 487-88 (internal quotation marks omitted). We therefore hold that the monetary payments required by the will are conditions subsequent, constituting liens on the land devised, enforceable in equity.

The circuit court's construction of the will leads to a partial intestacy.

No principle of testamentary construction is more firmly settled in Virginia than that there is a strong presumption that every testator intends to dispose of his entire estate . . . and the courts are inclined very decidedly against adopting any construction of wills which leaves the testator intestate as to any portion of his estate, unless that result is inescapable.

First Nat'l Exchange Bank v. Seaboard Citizens Nat'l Bank, 200 Va. 681, 685, 107 S.E.2d 408, 411 (1959) (quoting Arnold v. Groobey, 195 Va. 214, 224, 77 S.E.2d 382, 387 (1953)).

Even though the remainder interests vested at the time of the testator's death, the testator postponed their enjoyment by the remaindermen until the death of the life tenant. Therefore, their duty to make payment of one-half the assessed valuations of the lands devised to them did not arise until the death of the life tenant. The amounts they are required to pay are therefore to be ascertained by the real estate assessments existing on that date. See Armentrout v. Armentrout, 112 Va. 660, 663, 72 S.E.721, 722 (1911).

Conclusion

For the reasons stated, we will reverse the judgment appealed from and remand the case to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.